# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRADLEY INSLEY, JR.,** | * | |
| | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:22-cv-00854-JMC |
| **WEXFORD HEALTH SOURCES, INC.,** | | |
| | * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

The case *sub judice* concerns the alleged medical malpractice of Defendant Wexford Health Sources, Inc. in treating a wrist injury suffered by Plaintiff Bradley Insley, Jr. while Plaintiff was incarcerated at the Maryland Correctional Training Center ("MCTC"). *See generally* (ECF No. 4). Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 24). In addition to Defendant's Motion, the Court has considered Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF No. 29), as well as Defendant's Reply in Further Support of Motion for Summary Judgment (ECF No. 30). The Court concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons more fully explained below, the Court shall DENY Defendant's Motion.

I.   **BACKGROUND**[1]

At the time of Plaintiff's injury giving rise to this case, Plaintiff was an inmate at the MCTC in Hagerstown, Maryland. (ECF No. 4 at ¶ 1). Defendant was a medical provider that provided treatment to inmates at various Department of Corrections facilities throughout Maryland, and Defendant was under contract with the State of Maryland to provide such services. *Id.* at ¶ 2. On February 19, 2018, Plaintiff slipped and fell down a flight of stairs. (ECF No. 24-2 at p. 7).[2] Plaintiff reported to Contah Nimley, M.D. *Id.* At that time, Dr. Nimley was an employee of Defendant. (ECF No. 4 at ¶ 7). Dr. Nimley observed acute angulation and swelling in Plaintiff's wrist,[3] as well as Plaintiff's inability to move the fingers of his affected hand. (ECF No. 24-2 at p. 7). Dr. Nimley determined that Plaintiff needed to visit an emergency room. *Id.*

Plaintiff visited Meritus Medical Center's emergency room the same day he was injured: February 19, 2018. *Id.* at p. 8. Upon his arrival to the emergency room, Plaintiff "had an obvious deformity to his left upper extremity." *Id.* at p. 24. Furthermore, X-rays indicated that Plaintiff suffered a "comminuted, displaced, angulated and impacted fracture of the distal radius." *Id.* The emergency room staff decided to treat Plaintiff with a "hematoma block, reduction, and splint with a sugar-tong splint." *Id.* Furthermore, in addition to providing Plaintiff with medication to manage pain, the emergency room staff advised that Plaintiff "follow-up with the orthopedist within 1 week." *Id.*

---

[1] The Court's Section I provides a summary of facts that "are uncontroverted or set forth in the light most favorable to . . ." Plaintiff as the nonmoving party. *McDonald v. Metropolitan Life Ins. Co.*, No. JFM 08-02063, 2009 WL 3418527, at *1, n. 1 (D. Md. Oct. 20, 2009) (other citation omitted).

[2] When the Court cites to a specific page or range of pages, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

[3] The medical documents the Court has reviewed provide conflicting portions regarding whether Plaintiff injured his left or right wrist. However, the documents predominantly refer to an injury of Plaintiff's left wrist.

After receiving treatment in the emergency room, Plaintiff returned to MCTC on the night of February 19, 2018. *Id.* at p. 9. Upon his return to MCTC, Plaintiff reported to Dr. Nimley. *Id.* Dr. Nimley was aware that the emergency room staff recommended Plaintiff "see orthopedist in one week[]" due to Plaintiff's "left wrist fracture." *Id.* It appears that Dr. Nimley placed a consult request on either February 19, 2018, or February 20, 2018, for Plaintiff to be seen by an orthopedist one week later. *Id.* at pp. 9–10. On February 27, 2018, the utilization management physician reviewed and approved Dr. Nimley's consult request.[4] *Id.* at p. 21. Three days later, on March 2, 2018, Plaintiff was seen at MCTC by orthopedic surgeon Lawrence Manning, M.D. *Id.* at p. 30. Dr. Manning observed that Plaintiff maintained a "dorsal tilt of distal radius fracture and fracture of tip of ulner styloid." *Id.* Based on his observations, Dr. Manning recommended that Plaintiff be referred to an offsite orthopedist for consideration of whether Plaintiff should be provided "ORIF [(open reduction, internal fixation)] versus closed reduction under anesthia [*sic*] – URGENT." *Id.* (emphasis in original).

On March 27, 2018, Dr. Nimely saw Plaintiff for a chronic care visit relating to various other medical conditions from which Plaintiff suffers. *Id.* at p. 11. During this visit, Dr. Nimley acknowledged Dr. Manning's March 2, 2018 recommendation that Plaintiff be referred to an outside orthopedist. *Id.* However, despite Dr. Manning's recommendation being given on March 2, 2018, it was not until March 27, 2018, that Dr. Nimley entered a consult request conforming with Dr. Manning's recommendation. *Id.* Dr. Nimley's consult request indicated that the request was "Urgent." *Id.* at p. 17. On April 4, 2018, utilization management approved Plaintiff's orthopedic telemedicine consult with an offsite surgeon, as recommended by Dr. Manning. *Id.* at

---

[4] The identity of the utilization management physician is unclear. A Dr. Ritz reviewed and approved Dr. Nimley's consult request on February 21, 2018. *Id.* at p. 21. However, the medical records seem to indicate that the consult request was not officially approved until February 27, 2018. *Id.*

p. 19. On April 17, 2018, orthopedic surgeon Ashok Krishnaswamy, M.D. evaluated Plaintiff. *Id.* at p. 20. Dr. Krishnaswamy recommended "ORIF with screws and plate as soon as is possible." *Id.* Dr. Krishnaswamy recommended that Plaintiff undergo surgery within two weeks of the visit, i.e., May 3, 2018. *Id.* As soon as the telemedicine visit with Dr. Krishnaswamy ended, Dr. Nimley submitted a consult request in accordance with Dr. Krishnaswamy's recommendations. *Id.*

On May 3, 2018, Plaintiff was transported to Bon Secours Hospital to undergo surgery at the hands of Dr. Krishnaswamy. *Id.* at p. 31. Dr. Krishnaswamy's postoperative diagnosis of Plaintiff provides, "healing comminuted displaced malunion of unstable fracture, distal left radius and ulna." *Id.* Furthermore, Dr. Krishnaswamy explained the procedure performed as follows:

> Exploration of left wrist, correction of the malunion of the distal radius fracture, open reduction internal fixation with ITS distal radius compression plate and screws for the fixation of dorsal fragment with a Biomet cannulated cancellous screw with short arm cast splint application.

*Id.* However, Plaintiff's May 3, 2018 surgery failed to completely treat Plaintiff's wrist. *See generally* (ECF No. 24-1). Therefore, during the three years following Plaintiff's May 3, 2018 surgery, Plaintiff underwent an additional two surgeries and one procedure in an effort to treat his injured wrist. (ECF No. 24-1 at pp. 6–7).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his]

4

pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.   ANALYSIS

"To prevail in a medical malpractice negligence action, a plaintiff must prove four elements: '(1) the defendant's duty based on an applicable standard of care, (2) a breach of that duty, (3) that the breach caused the injury claimed, and (4) damages.'" *Frankel v. Deane*, 480 Md. 682, 699 (2022) (quoting *Am. Radiology Servs., LLC v. Reiss*, 470 Md. 555, 579 (2020)). "Because of the complex nature of medical malpractice cases, . . . [plaintiffs must present expert testimony] to establish breach of the standard of care and causation." *Frankel*, 480 Md. at 699 (quoting *Stickley v. Chisholm*, 136 Md. App. 305, 313 (2001)) (internal quotation marks omitted).

In its Motion, Defendant essentially makes three arguments: (1) Plaintiff cannot hold Defendant liable under a theory of *respondeat superior* because Plaintiff "does not identify any . . . employee [of Defendant] for whom [Plaintiff] seeks to hold [Defendant] liable[;]" (2) Plaintiff has failed to "produce any admissible evidence to establish the standard of care owed by any . . .

employee [of Defendant] or how the employee breached that standard of care[;]" and (3) the timing of Plaintiff's May 3, 2018 surgery did not cause Plaintiff injury. *See generally* (ECF No. 24 & 30). The Court will address each of these arguments immediately below.

### A. There Is a Genuine Dispute of Material Fact Regarding Whether Defendant's Employees Breached the Standard of Care Owed to Plaintiff, and Plaintiff May Rely on a Theory of Respondeat Superior.

"Establishment of a legal duty is a prerequisite to a claim of negligence because [t]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another." *Crise v. Md. Gen. Hosp., Inc.*, 212 Md. App. 492, 520 (2013) (quoting *Jones v. State*, 425 Md. 1, 19 (2012)) (other citation and internal quotation marks omitted). "An action for medical malpractice, being a type of negligence action, requires proof, among other elements, of a duty of care owed by the defendant to the plaintiff." *Crise*, 212 Md. App. at 520. "Ordinarily, the duty of care in a medical malpractice action arises from the health care provider-patient relationship." *Id.* at 521 (citing *Dehn v. Edgecombe*, 384 Md. 606, 620 (2005)) (other citations omitted). "That duty, stated more fully, is to exercise the degree of care or skill expected of a reasonably competent health care provider in the same or similar circumstances." *Crise*, 212 Md. App. at 521 (citing *Shilkret v. Annapolis Emergency Hosp. Assoc.*, 276 Md. 187, 200 (1975) ("a physician is under a duty to use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances."); MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-02 ("[T]he health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience . . . .")).

Ordinarily, "when a health care provider-patient relationship exists, the 'duty of care' issue is not whether any duty exists but the nature and scope of the duty." *Crise*, 212 Md. App. at 521. "With few exceptions, the applicable standard of care, *i.e.*, the nature and scope of the duty owed, is proven by expert testimony (as is the issue whether the applicable standard of care was breached)." *Id.* (other citations omitted). "To be sure, the question whether any duty of care is owed by a defendant to a plaintiff, whether in a medical malpractice or any other negligence action, is one of law." *Id.* at 522 (other citations omitted). However, the extent of the duty owed is to be proffered by experts and determined by the trier of fact. *See id.* at 521–22 (citing *Hahn v. Suburban Hosp. Assoc.*, 54 Md. App. 685, 695 (1983) (stating that it is "axiomatic that a qualified medical expert can render an opinion as to whether a hospital did or did not comply with applicable standards of care[,] . . . permitting a trier of fact to determine whether the hospital was negligent"), *overruled on other grounds by Newell v. Richards*, 323 Md. 717, 731–32 (1991)).

Turning to Plaintiff's case, Plaintiff has hired orthopedic surgeon Bahman Sadr, M.D., as an expert. (ECF No. 29 at p. 12). In his expert report, Dr. Sadr opines, in relevant part:

> [The] type of fracture [suffered by Plaintiff] can only be treated by *timely* intervention which means surgery to align the fracture fragments anatomically. . . . At two months after injury when the patient was first evaluated by an orthopaedic surgeon the window of opportunity for successful reduction (realignment) and internal fixation had passed. At seventy three days after the fracture when the patient finally reached the operating room the fracture would have been solidly healed in malalignment. The reason for the poor outcome and the need for two additional salvage procedures in this case is undoubtedly delayed surgery resulting in suboptimal realignment of the fragments and persistent incongruity in the joint. It was incumbent on those who initially evaluated this injury and who subsequently took care of the patient to recognize the urgency of treatment and refer the patient to a specialist in a timely manner. This was not done in the case [of] Bradley Insley and he ended up with a bad outcome. It is clear that this practice falls below the accepted standard of care in orthopaedic surgery.

*Id.* at pp. 12–13 (emphasis in original). Viewing the evidence before the Court in the light most favorable to Plaintiff, the Court recognizes that Plaintiff has presented an expert's opinion that

7

Defendant breached its duty of care by not getting Plaintiff treated sooner.[5] Furthermore, on March 2, 2018, Dr. Manning provided Defendant with an "urgent" recommendation that Plaintiff see another orthopedic surgeon for the purpose of determining a treatment plan. However, a yet unexplained period of twenty-five (25) days elapsed before Defendant acted upon Dr. Manning's recommendation, i.e., Dr. Nimley did not place the consult request recommended by Dr. Manning until March 27, 2018, and then only when Dr. Nimley incidentally saw Plaintiff for other medical conditions but noticed that the orthopedic consult had still not been entered. The Court also notes that other consult requests were acted upon in a timelier fashion. At this juncture, the Court cannot conclude that Plaintiff's proffer of evidence regarding Defendant's duty and purported breach of that duty is of such a deficient nature as to entitle Defendant to judgment as a matter of law.

Turning to Defendant's *respondeat superior* contentions, the facts before the Court indicate that Plaintiff has grounds on which he can argue for the application of *respondeat superior* to hold Defendant liable for negligence. "*Respondeat superior* is 'a means of holding employers . . . vicariously liable for the tortious conduct of an employee acting within the scope of his/her employment.'" *Davis v. Frostburg Facility Operations, LLC*, 457 Md. 275, 296–97 (2018) (quoting *Serio v. Balt. Cty.*, 384 Md. 273, 397–98 (2004)). "A successful *respondeat superior* claim[] will impose joint and several liability on the employer for the tortious conduct of an employee." *Davis*, 457 Md. at 297 (citing *S. Mgmt. Corp. v. Taha*, 378 Md. 461, 481 (2003)). Proof of an employee's negligence is a prerequisite to a party's reliance on a theory of *respondeat superior*. *See Davis*, 457 Md. at 297 ("[P]roof of the employee nurse's negligence in operating the mechanical lift is a prerequisite to proving a claim for *respondeat superior*.") (citing *Serio*, 384 Md. at 397–98).

---

[5] Notably, Dr. Sadr's opinion is uncontested at this stage. Defendant has not challenged Dr. Sadr's qualifications to provide his opinion, nor has Defendant offered the opinion of its own expert. (ECF No. 30 at p. 5).

As the Court explained above, Dr. Sadr maintains that Plaintiff suffered further unnecessary injury to Plaintiff's wrist because "those who initially evaluated this injury and who subsequently took care of the patient . . ." failed to recognize the urgency of Plaintiff's need for treatment. (ECF No. 29 at p. 13). It appears evident to the Court that Plaintiff's care and treatment was the sole responsibility of Defendant and, vicariously, Defendant's employees. There has been no allegation or representation that anyone other than employees for Defendant could have been the cause of Plaintiff's delay in receiving necessary surgery. The Court also notes that the medical care at the facility was overseen by Defendant per contract. Further, Dr. Nimley—an employee of Defendant—did not submit the urgent consult request pursuant to Dr. Manning's own urgent recommendation until twenty-five (25) days had elapsed.[6] Although it could be that it was not Dr. Nimley's responsibility to do so, the Court cannot draw that conclusion in deciding the present Motion and, even if it could as to Dr. Nimley, the allegations and evidence also support the allegation that another of Defendant's employees should have done so sooner. The Court is satisfied that there is evidence sufficient to warrant a jury's consideration on this issue.

### B. Whether the Allegedly Deficient Surgery Plaintiff Received At the Hands of Dr. Krishnaswamy Is a Superseding Cause Sufficient to Sever the Causal Connection Between Defendant's Possible Negligence and Plaintiff's Subsequent Injuries Is a Question For a Jury.

Defendant appears to argue that Plaintiff's allegedly inadequate surgery which Dr. Krishnaswamy performed on May 3, 2018, is a superseding cause of Plaintiff's injuries. (ECF No. 24-1 at pp. 11–13; ECF No. 30 at pp. 3–5). "[I]n order to be found negligent, the negligence of

---

[6] In his Complaint, Plaintiff alleges that another employee of Defendant—Yvette Ledjo, NP—failed to issue the consult request on March 14, 2018. (ECF No. 4 at ¶ 13). This is simply further indication that Defendant, acting through its employees—which is the only way Defendant can act, as Defendant itself reminded the Court—potentially failed to satisfy its duty of care to treat Plaintiff sooner.

9

the [party] must be a proximate cause of the alleged harm." *Copsey v. Park*, 453 Md. 141, 164 (2017) (citing *Stone v. Chic. Title Ins. Co. of Md.*, 330 Md. 329, 337 (1993)).

> Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury. *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A.2d 592 (1941), or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes.

*Peterson v. Underwood*, 258 Md. 9, 16 (1970).

"In analyzing the defense of superseding cause[,] we have held that 'a superseding cause arises primarily when "unusual" and "extraordinary" independent intervening negligent acts occur that could not have been anticipated by the original tortfeasor.'" *Copsey*, 453 Md. at 165 (quoting *Pittway Corp. v. Collins*, 409 Md. 218, 243–45 (2009)). The Supreme Court of Maryland[7] "has stated that Section 443 of the Restatement (Second) of Torts, Considerations Important in Determining Whether an Intervening Force is a Superseding Cause, 'establishes the test that has been applied in Maryland courts for determining when an intervening negligent act rises to the level of a superseding cause.'" *Copsey*, 453 Md. at 165–66 (quoting *Pittway*, 409 Md. at 248)). Section 443 sets forth the following relevant considerations in determining whether an intervening cause amounts to a superseding cause:

> (a) the facts that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

---

[7] On December 14, 2022, "the former Court of Appeals of Maryland [was] renamed the Supreme Court of Maryland and the Court of Special Appeals [was] renamed the Appellate Court of Maryland." MARYLAND COURTS, *Appellate Courts*, https://www.mdcourts.gov/opinions/opinions (last visited Mar. 9, 2023). "This is a change in name only and does not affect the precedential value of the opinions of the two courts issued before the effective date of the name change." *Id.*

> (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; [and]
>
> (f) the degree of culpability of a wrongful act of a third person which set the intervening force in motion.

*Copsey*, 453 Md. at 166. However, "unless the facts admit of but one inference . . . the determination of proximate cause . . . is for the jury." *Id.* (citing *Banks v. Iron Hustler Corp.*, 59 Md. App. 408, 431 (1984) ("Whether the intervening act of a third party suffices as a superseding cause is generally for the trier of fact to determine.")) (other citations and internal quotation marks omitted). However, considering the factors relevant in determining whether an intervening cause amounts to a superseding one, the Court notes that an inadequate surgery performed on a wrist—which should have been performed prior to seventy-three (73) days after the initial injury—does not strike the Court as extraordinary or unusual.

Defendant has presented evidence which Defendant believes definitively shows that Plaintiff's injuries and complaints result from "the fact that Dr. Krishnaswamy botched the [May 3, 2018] surgery . . . ." (ECF No. 24-1 at p. 4). Specifically, Defendant points to evidence from Dr. Sadr and Plaintiff's eventual post-release treating orthopedic—Elizabeth Langhammer, M.D.—to show that Dr. Krishnaswamy inadequately performed or failed to perform several aspects of Plaintiff's May 3, 2018 surgery. However, the Court recognizes that Dr. Sadr opines

11

that two months after Plaintiff injured his wrist, "the window of opportunity for successful reduction (realignment) and internal fixation had passed." (ECF No. 29 at p. 13). Furthermore, Dr. Sadr posits that the delay by Defendant in seeking treatment for Plaintiff resulted in a suboptimal surgery performed by Dr. Krishnaswamy. Although Defendant points to Dr. Sadr's deposition testimony which Defendant contends provides opposite conclusions regarding the surgery Dr. Krishnaswamy performed, the Court is not weighing the evidence and making determinations thereon at this juncture. Whether Dr. Krishnaswamy's surgery is a superseding cause is a question that should be decided by a jury. *See Copsey*, 453 Md. at 148 ("Further, causation was an issue for the jury to determine and [the defendant] presented sufficient evidence for a reasonable jury to conclude that he was not negligent; and if found to be negligent, his negligence was superseded by the independent and extraordinary negligence of others.").

The Court also notes that subsequent medical malpractice by Dr. Krishnaswamy, even if proven, might well make him a joint tortfeasor, but, in the absence of a finding of superseding intervening cause, would not otherwise discharge Defendant from liability. *See Gallagher v. Mercy Med. Ctr., Inc.*, 463 Md. 615 (2019) ("If, subsequently, in the course of receiving treatment for his or her injures, the plaintiff is negligently treated by a physician, the physician's negligence is a subsequent tort for which the original tortfeasor and the doctor are jointly liable."); *Underwood-Gary v. Mathews*, 366 Md. 660 (2001) ("Petitioner ignores the well-settled principle of tort law that 'a negligent actor is liable not only for harm that he directly causes but also for any additional harm resulting from normal efforts of third persons in rendering aid, irrespective of whether such acts are done in a proper or a negligent manner.'") (quoting *Morgan v. Cohen*, 309 Md. 304, 310 (1987)).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment (ECF No. 24). A separate order follows.

Date: <u>June 21, 2023</u>                                    /s/
                                                J. Mark Coulson
                                                United States Magistrate Judge